**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| EASTERN NUMISMATICS, INC., Plaintiff, | : | Civil Action No. _____ |
| v. | : | **COMPLAINT** |
| AMANDEEP JASSAL and JASSAL GROUP, INC. d/b/a RARE DATE COINS, | : | **JURY TRIAL DEMANDED** |
| Defendants. | : | |

## INTRODUCTION

1. Plaintiff brings this action against Amandeep Jassal ("Jassal") and Jassal Group, Inc. d/b/a Rare Date Coins ("Rare Date Coins," and collectively, "Defendants"), under the provisions of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), federal trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), and common law trademark infringement and unfair competition.

2. For more than fifty years, Plaintiff Eastern Numismatics has bought and sold rare coins and collectibles under the name and mark EASTERN NUMISMATICS (the "Mark").

3. Through decades of continuous use, extensive advertising, and tens of millions of dollars in annual sales, the EASTERN NUMISMATICS Mark has become well known and distinctive within the rare coin and collectibles market.

4. For the better part of the past year, Defendants, a directly competing rare coin business, have registered a website using the EASTERN NUMISMATICS Mark and diverting shoppers to their competing rare coin business, Rare Date Coins.

5. On or about February 13, 2026 — more than a half-century after Eastern Numismatics established its business and mark — Defendants acquired the domain name

<easternnumismatics.com> (the "Domain Name"), which is identical to the EASTERN NUMISMATICS Mark but for the addition of the ".com" top-level domain.

6. Defendants promptly launched a fully operational, directly competing rare coin business at the Domain Name under the name "Rare Date Coins," and used the Domain Name to divert Internet users searching for Eastern Numismatics to Defendants' competing website.

7. Amandeep Jassal, the manager of Rare Date Coins, has worked in the rare coin industry for more than twenty years, and is aware of Eastern Numismatics and its distinctive Mark.

8. Jassal also operates his competing rare coin business, Rare Date Coins, on Long Island, a short distance from Eastern Numismatics.

9. Defendants registered and used the Domain Name with a bad-faith intent to profit from the goodwill Eastern Numismatics has built in the EASTERN NUMISMATICS Mark. Eastern Numismatics never authorized Defendants to use its Mark, and Defendants have no rights or legitimate interest in the Domain Name.

10. Eastern Numismatics has already prevailed against Defendants in a proceeding under the Uniform Domain Name Dispute Resolution Policy ("UDRP"), where the Panel found that Defendants registered and used the Domain Name in bad faith and ordered its transfer to Eastern Numismatics.

11. The Domain Name has since been transferred to Plaintiff.

12. The UDRP proceeding resolved control of the Domain Name but did not compensate Eastern Numismatics for Defendants' unlawful conduct and does not foreclose Defendants from registering other infringing domain names. Through this action, Plaintiff seeks damages, statutory damages, attorneys' fees and costs, and injunctive relief to remedy

Defendants' cybersquatting and unfair competition and to prevent further infringement of the EASTERN NUMISMATICS Mark.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331and 1338(a) and (b), because this action arises under the Lanham Act, 15 U.S.C. § 1125(d).

14. This Court has supplemental jurisdiction over Plaintiff's New York common law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

15. This Court has personal jurisdiction over Defendants because Defendant Jassal resides in New York, Defendant Rare Date Coins maintains its place of business in New York, and Defendants committed the acts complained of in New York.

16. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendants reside in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims, and the harm to Plaintiff, occurred in this District.

**PARTIES**

17. Plaintiff Eastern Numismatics, Inc. is a New York corporation, with its principal executive office at 642 Franklin Avenue, Garden City, New York 11530, in Nassau County. Eastern Numismatics buys and sells rare coins and collectibles under the name and common law mark EASTERN NUMISMATICS.

18. Defendant Amandeep Jassal is an individual residing in Greenlawn, New York, and is the owner of Jassal Group and its rare coin business, Rare Date Coins. Upon information and belief, Jassal registered, controlled, or directed the registration and use of the Domain Name and directed, authorized, or participated in the acts alleged herein.

19. Defendant Jassal Group, Inc. d/b/a Rare Date Coins is, upon information and belief, a business operated by Jassal that offers rare coins and collectibles for sale, with an address at 90 Broadhollow Road, Melville, New York 11747, and a mailing address of P.O. Box 780, Greenlawn, New York 11740. Rare Date Coins operates the website at the Domain Name and describes itself as "a division of Jassal Group."

## FACTS

### A. Plaintiff's Business and the EASTERN NUMISMATICS Mark

20. Plaintiff is the owner of the common law EASTERN NUMISMATICS Mark (the "Mark"), which it has used continuously in commerce since at least April 25, 1974, in connection with its business of the sale of rare coins and collectibles.

21. Eugene Parrella ("Parella") is the co-founder and owner of Eastern Numismatics. He co-founded the business in 1974. Since that time, Eastern Numismatics has continuously operated a business buying and selling rare coins and collectibles.

22. Eastern Numismatics began serving customers on Long Island and, over the course of its history, has developed a customer base extending throughout the United States. The Company has become well known in the rare coin and collectibles industry and has received substantial press coverage in connection with its business.

23. Eastern Numismatics has operated an online presence for approximately thirty years.

24. By at least December 1996, the Company was operating its business website at <uscoins.com>, where it promoted and conducted its rare coin and collectibles business under the Mark.

25. Eastern Numismatics has invested substantial resources in promoting its business under the Mark. During the past ten years alone, the Company has invested hundreds of

thousands of dollars in print and digital marketing, including search-engine optimization, under the Mark, and has spent similar amounts on email and website hosting costs.

26. Eastern Numismatics has advertised in major publications, including the *Wall Street Journal*, *USA Today*, and *Money Magazine*, as well as in publications associated with organizations including AARP and the Elks. The Company has also advertised through television and other media, and online through Google Ads and Meta's Facebook and Instagram platforms.

27. These marketing and advertising efforts have generated substantial business for Eastern Numismatics. In 2025, the Company generated more than $17 million in income from the sale of coins and collectibles to customers on Long Island and throughout the United States and conducted more than 30,000 transactions. Over its history, the Company has made hundreds of millions of dollars in sales.

28. As a result of Eastern Numismatics' continuous use since 1974, its extensive advertising and sales, and the public recognition its business has earned, the EASTERN NUMISMATICS Mark is distinctive, has acquired secondary meaning, and is closely associated with Eastern Numismatics in the rare coin and collectibles industry.

29. Plaintiff has policed and enforced its rights in the EASTERN NUMISMATICS Mark in the past and continues to do so. Plaintiff's exclusive and continuous use of Plaintiff's Mark has established it as a distinctive identifier of Plaintiff's goods in this market.

**B. <u>Defendants' Improper Acquisition of the <easternnumismatics.com> Domain Name</u>**

30. The Domain Name, <easternnumismatics.com>, was originally registered by a third party on or about April 18, 1999. In that same year, the third-party registrant attempted to

sell it to Eastern Numismatics for an inflated price. Eastern Numismatics declined and continued to operate its online business through <uscoins.com>.

31. By no later than February 2008, Eastern Numismatics had acquired the Domain Name and used it in its business until approximately September 25, 2012.

32. After approximately September 25, 2012, the Domain Name inadvertently lapsed. It was subsequently transferred to New Ventures Services, Corp. and thereafter passed among other domain holding entities before lapsing again in 2022.

33. From approximately 2012 until early 2026, the Domain Name was parked, commercially inactive, and ultimately abandoned.

34. On or about February 13, 2026, the Domain Name was acquired by Defendants.

35. The current WHOIS record for the Domain Name reflects a creation date of February 13, 2026, an expiration date of February 13, 2029, GoDaddy.com, LLC as registrar, and the privacy service, Domains By Proxy, LLC, of Tempe, Arizona, as the listed registrant.

36. By February 2026, Eastern Numismatics had been in continuous business for more than fifty years, had generated substantial revenue, had developed customers throughout the United States, and had established significant recognition in the rare coin and collectibles industry.

37. Shortly after acquiring the Domain Name, Defendants launched a fully operational website at the Domain Name under the name "Rare Date Coins," described as "a division of Jassal Group.") The website offered rare coins and collectibles for sale — the same category of goods that Eastern Numismatics has sold continuously since 1974.

38. The Domain Name was used to forward or direct Internet users searching for Plaintiff's business to a competing website operated by Defendants. During the period of

Defendants' control, a person searching for Eastern Numismatics who entered <easternnumismatics.com> into a web browser was directed to Defendants' competing business.

39. Eastern Numismatics never authorized, licensed, or otherwise permitted Jassal, Rare Date Coins, or anyone acting on their behalf to use the EASTERN NUMISMATICS name or Mark as a domain name, trade name, or otherwise.

40. Upon information and belief, neither Jassal nor Rare Date Coins has ever operated a business known as "Eastern Numismatics," nor has either been commonly known by that name.

**C. Defendants' Knowledge of the Mark and Bad Faith**

41. Defendants operate in the same specialized industry as Eastern Numismatics: the sale of rare coins and collectibles to a customer base across the US.

42. Upon information and belief, Defendant Jassal has worked in the rare coin industry for more than twenty years, holds himself out as a member of the Professional Numismatists Guild, and previously served as Director of Sales at Stack's Bowers Galleries, a prominent numismatic auction house which has been in business for over 90 years.

43. Jassal, therefore, is no stranger to the rare coin industry, and would have been aware of major players in it, including Eastern Numismatics.

44. Jassal also operates a rare coin business in Huntington, Long Island, which is close to Eastern Numismatics' home base of Garden City, Long Island.

45. Given the length and prominence of Eastern Numismatics' business, the fact that Defendants operate in the same specialized rare coin industry, Jassal's more than twenty years of experience in that industry, Parrella's personal acquaintance with Jassal, and the geographic proximity of Defendants' business to Eastern Numismatics, Defendants knew of Eastern Numismatics and the EASTERN NUMISMATICS Mark when they acquired the Domain Name.

46. There is no legitimate reason why a competing rare coin business would select the Domain Name in February 2026 other than its association with Eastern Numismatics and the goodwill that it has built in the EASTERN NUMISMATICS Mark over decades.

47. The Domain Name contains the EASTERN NUMISMATICS Mark in its entirety; the only additional element is the ".com" top-level domain.

**D. <u>The UDRP Proceeding and Transfer Order</u>**

48. On or about September 10, 2026, Eastern Numismatics commenced a proceeding under the UDRP before the Forum (formerly, National Arbitration Forum), challenging Defendants' registration and use of the Domain Name and seeking its transfer.

49. In a decision issued on October 19, 2026, the Panel found that the Domain Name is identical or confusingly similar to the EASTERN NUMISMATICS Mark, that Defendants had no rights or legitimate interests in the Domain Name, and that Defendants registered and used the Domain Name in bad faith.

50. The decision ordered the transfer of the Domain Name to Eastern Numismatics.

51. The UDRP decision resolved control of the Domain Name. However, it did not award damages or any other monetary relief, it did not address trademark infringement or unfair competition claims, and it does not preclude this action.

**E. <u>Harm to Eastern Numismatics</u>**

52. Defendants' acts were willful and were undertaken with the deliberate intent to trade on the goodwill and reputation associated with the EASTERN NUMISMATICS Mark and to divert to Defendants' competing business the Internet users and customers searching for Eastern Numismatics.

53. During the period of Defendants' control of the Domain Name, Defendants' use was likely to (and, upon information and belief, did) cause confusion among consumers as to the

source, sponsorship, affiliation, or endorsement of Defendants' website and products, and led consumers searching for Eastern Numismatics to be diverted to Defendants' competing business.

54. Although Eastern Numismatics has recovered the Domain Name through the UDRP, Defendants' conduct caused substantial injury to Eastern Numismatics and to its goodwill and reputation.

55. Absent the injunctive relief sought herein, Defendants remain able to register other domain names identical or confusingly similar to the EASTERN NUMISMATICS Mark.

## COUNT ONE
## Cybersquatting
## (15 U.S.C. § 1125(d))

56. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

57. Eastern Numismatics owns common law rights in the distinctive EASTERN NUMISMATICS Mark, which was distinctive at the time Defendants registered the Domain Name. The Mark is protectable under the Lanham Act whether or not it is federally registered.

58. Defendants registered, trafficked in, and used the Domain Name, which is identical or confusingly similar to the EASTERN NUMISMATICS Mark.

59. Defendants registered, trafficked in, and used the Domain Name with a bad-faith intent to profit from the EASTERN NUMISMATICS Mark. Among other things, upon information and belief:

(a) Defendants have no trademark or other intellectual property rights in the Domain Name;

(b) the Domain Name does not consist of the legal name of, and is not commonly used to identify, any Defendant;

(c) Defendants made no prior bona fide use of the Domain Name in connection with the offering of any goods or services before acquiring it in February 2026, and have made no bona fide noncommercial or fair use of the Mark;

(d) Defendants intended to divert consumers searching for "Eastern Numismatics" from Plaintiff's business to Defendants' competing website, for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of that website;

(e) Defendants acquired the Domain Name — which they knew to be identical to the distinctive EASTERN NUMISMATICS Mark — for use in a directly competitive rare coin business;

(f) The EASTERN NUMISMATICS Mark is distinctive; and

(g) Defendants registered the Domain Name using a privacy service and thereafter transferred the registration to conceal their identity.

60. The nine non-exclusive statutory factors set forth in 15 U.S.C. § 1125(d)(1)(B)(i), considered together with the totality of the circumstances, establish Defendants' bad-faith intent to profit from the Mark. No safe harbor under 15 U.S.C. § 1125(d)(1)(B)(ii) applies, because Defendants did not believe and had no reasonable grounds to believe that their use of the Domain Name was fair or otherwise lawful.

61. Defendants' conduct is directly and proximately causing substantial, immediate, and irreparable harm to Eastern Numismatics and to its goodwill and reputation and will continue to do so unless enjoined. Eastern Numismatics has no adequate remedy at law.

62. Eastern Numismatics is entitled to injunctive relief, including transfer to Eastern Numismatics of any other domain name owned or controlled by Defendants that is identical or confusingly similar to the Mark, pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C); to recover Defendants' profits, actual damages, and costs under 15 U.S.C. § 1117(a), or, at Eastern Numismatics' election, statutory damages of not less than $1,000 and not more than $100,000 per domain name under 15 U.S.C. § 1117(d); and to recover attorneys' fees as an exceptional case under 15 U.S.C. § 1117(a).

**COUNT TWO**
**Federal Trademark Infringement and Unfair Competition**
**False Designation of Origin**
**(15 U.S.C. § 1125(a))**

63. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

64. Eastern Numismatics owns a valid and protectable common law trademark in the EASTERN NUMISMATICS Mark, which it has used in commerce continuously since at least April 1974, in connection with the sale of rare coins and collectibles. The EASTERN NUMISMATICS Mark is inherently distinctive. Further, through hundreds of millions of dollars in revenue, hundreds of thousands of customer transactions, substantial marketing investment, and exclusive market use, the Mark has accrued significant goodwill as a source identifier for rare coins and collectibles and acquired secondary meaning that identifies Plaintiff as the source of the goods offered under the Mark.

65. Defendants used the EASTERN NUMISMATICS Mark in commerce, in the identical Domain Name and in connection with the marketing and sale of competing rare coins and collectibles, without Eastern Numismatics' authorization. Such use constitutes a false designation of origin and a false or misleading representation of fact within the meaning of 15 U.S.C. § 1125(a).

66. Defendants' unauthorized use of the EASTERN NUMISMATICS Mark is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Eastern Numismatics, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities. The parties' goods are directly competitive, the Mark is strong, and Defendants adopted the Mark in bad faith and with knowledge of Eastern Numismatics' prior rights — factors that establish a likelihood of confusion under the governing multi-factor analysis.

67. A claim for trademark infringement and unfair competition under Section 43(a) requires that the plaintiff own a mark entitled to protection and that the defendant's use is likely to cause consumer confusion — both of which are established here.

68. Defendants' conduct was willful and has caused, and unless enjoined will continue to cause substantial and irreparable harm to Eastern Numismatics and to its goodwill and reputation, for which it has no adequate remedy at law. Eastern Numismatics is entitled to injunctive relief under 15 U.S.C. § 1116 and to recover Defendants' profits, its actual damages, and costs and, in exceptional cases, attorneys' fees under 15 U.S.C. § 1117(a).

## COUNT THREE
## Common Law Trademark Infringement

69. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

70. Eastern Numismatics owns a valid and protectable common law trademark in the EASTERN NUMISMATICS Mark, which it has used continuously in commerce since at least April 25, 1974, and which has acquired secondary meaning through its long and exclusive use, extensive advertising, and commercial success.

71. Eastern Numismatics' use of the EASTERN NUMISMATICS Mark is senior to, and long predates, Defendants' acquisition and use of the Domain Name in 2026.

72. Defendants' use of the EASTERN NUMISMATICS Mark, in the identical Domain Name and in connection with a directly competing rare coin business, is likely to cause confusion, mistake, or deception as to the source, sponsorship, affiliation, or endorsement of Defendants' goods and services. The parties' marks are identical, the parties' goods are directly competitive, and Defendants adopted the Mark with knowledge of Eastern Numismatics' prior rights.

73. The elements of a claim for trademark infringement under New York common law mirror those under the Lanham Act, requiring a valid mark entitled to protection and a likelihood of consumer confusion.

74. As a direct and proximate result of Defendants' conduct, Eastern Numismatics has suffered and will continue to suffer damage to its business, goodwill, and reputation, and irreparable harm for which it has no adequate remedy at law.

## COUNT FOUR
## Common Law Unfair Competition

75. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

76. Through its continuous use since 1974, its substantial advertising, and its commercial success, Eastern Numismatics has developed valuable goodwill in the EASTERN NUMISMATICS Mark that constitutes property or a commercial advantage protected under New York law.

77. Defendants, in bad faith, misappropriated the goodwill, skill, expenditures, and labor of Eastern Numismatics by acquiring the identical Domain Name and using it to operate a directly competing rare coin business and to divert Eastern Numismatics' customers to Defendants' website.

78. Defendants acted in bad faith. As a junior user, Defendants adopted the Domain Name with knowledge of Eastern Numismatics' senior rights to the EASTERN NUMISMATICS Mark, and with the intent to exploit Eastern Numismatics' goodwill and to sow confusion between the parties' competing businesses.

79. Under New York common law, an unfair competition claim requires the showing necessary for trademark infringement together with an additional showing of the defendant's bad faith — both of which are present here.

80. As a direct and proximate result of Defendants' unfair competition, Eastern Numismatics has suffered and will continue to suffer damage to its business, goodwill, and reputation, and irreparable harm for which it has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Eastern Numismatics respectfully requests that the Court enter judgment against Defendants as follows:

1. Declaring that Defendants have violated Section 43(d) and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(d) and 1125(a), respectively), along with New York General Business Law §§ 360-l and 349, and have engaged in trademark infringement and unfair competition under New York common law;

2. Ordering Defendants, within ten (10) days of the entry of judgment, to transfer to Eastern Numismatics the registration of any domain name besides <easternnumismatics.com> (which has already been transferred to Eastern Numismatics through the UDRP proceeding) owned or controlled by Defendants that is identical or confusingly similar to the EASTERN NUMISMATICS Mark (the "Prohibited Domain Names"), and ordering the relevant registrar(s), upon Eastern Numismatics' request, to transfer the Prohibited Domain Names to Eastern Numismatics, pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C);

3. Preliminarily and permanently enjoining Defendants, and all those in active concert or participation with them, from (a) registering, trafficking in, using, or transferring any of the Prohibited Domain Names; (b) registering or using any domain name or other source identifier that is identical or confusingly similar to the EASTERN NUMISMATICS Mark; and (c) otherwise using the EASTERN NUMISMATICS Mark, or any confusingly similar designation, in a manner likely to cause confusion or to trade on Eastern Numismatics' goodwill;

4. Awarding Eastern Numismatics, at its election, (a) Defendants' profits, Eastern Numismatics' actual damages, (b) treble damages for willful infringement, and (c) statutory damages of up to One Hundred Thousand Dollars ($100,000) per domain name under 15 U.S.C. § 1117(d);

5. Awarding Eastern Numismatics its damages, and Defendants' profits, on its New York common law claims, including actual damages in an amount to be determined at trial;

6. Declaring this an exceptional case and awarding Eastern Numismatics its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a);

7. Awarding Eastern Numismatics pre-judgment and post-judgment interest; and

8. Awarding Eastern Numismatics such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: November 16, 2026

Respectfully submitted,
LEWIS & LIN, LLC

/s/ Brett E. Lewis
Brett E. Lewis
Abraham Moussako
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Brett@iLawco.com
*Attorneys for Plaintiff Eastern Numismatics, Inc.*